John H. Galloway, J.
Petitioners, who are recipients of public assistance under the administration of the Department *955 of Social Services of Westchester County, reside in a multiple residence in the Village of Port Chester. They bring this action for a declaratory judgment: (1) stating their rights and the rights and powers of the respondent Commissioner of said Department under section 143-b of the Social Services Law (Spiegel Act) and section 305-a of the Multiple Residence Law, and that the determination and action of the respondent in paying rental money directly to petitioners ’ landlord are in violation of State and Federal statutes and constitutional law; (2) enjoining respondent from paving any more rental moneys to petitioners’ landlord until building code violations alleged against said premises are corrected; and (3) ordering respondent to recover from the petitioners’ landlord any moneys turned over to him. They claim that respondent is without authority to either pay back rent before violations are cleared, or to pay the landlord directly over their objections.
It appears to be conceded that the violations placed against the premises, wherein the petitioners reside, by the Building Inspector of the Village of Port Chester at various times between December 4,1967 and October 31,1968 relate to conditions which are dangerous, hazardous and detrimental to life or health of the residents thereof.
Respondent takes the position that he has the right to pay the rent on behalf of petitioners to the landlord directly, even though all of the violations of record are not yet cleared, since he has been satisfied by the representations of the landlord that payment of the rent is required in order that he may have sufficient funds to correct said violations.
In support of his position, the respondent has interposed three affirmative defenses alleging objections in point of law: (1) that, in petitioners’ status as recipients of public assistance, they have no entitlement to money grants equivalent to rent payments unless such grant was necessary to eliminate or reduce a budget deficit for the rent portion of their respective budgets, and that the petition contains no allegation that such cash equivalent is necessary to defray the cost of their shelter; (2) that on or about October 31, 1968, he received the first official notification of violations on the premises from the building inspector of the village, whereupon he invoked the provisions of section 143-b of the Social Services Law and withheld petitioners’ rent, commencing with the month of November, 1968; that on or about May 26, 1969, the building inspector advised that rear porches and stairs at the premises continue to violate the local statutes, but made no reference to the other violations previously placed against the premises, and at the *956 same time the landlord’s agent confirmed an undertaking that upon payment of back rent, the repairs on the rear porches and stairs would be completed as required, by local statutes; that pursuant to the discretion vested in respondent under section 143-b of the Social Services Law, checks for rent were issued to the orders of petitioners and the landlord, the proceeds of which were intended by him to be used for the purpose of eliminating the aforesaid violations, and were issued in that manner to assure respondent that the proceeds would, in fact, be received for that purpose by the landlord; (3) that since respondent has sole responsibility for the administration of public assistance within the county district, pursuant to the provisions of the Social Services Law, the rules and regulations of the State Department of Social Services, the Westchester County Charter and Administrative Code, a determination of the need for public assistance is within the sale discretion of respondent, subject to such rules and regulations and statutes regarding fair hearings on an allegation of invalid denial of public assistance; and that to the extent that petitioners claim entitlement to additional public assistance equivalent to the rent portion of their respective budgets, they have failed to exhaust their administrative remedies prior to the institution of these proceedings. Upon the foregoing, the respondent prays for judgment dismissing the proceeding on the merits.
Answering those defenses and objections in point of law, petitioners raise the following objections in point of law: (1) that the respondent’s action in paying rent directly to the landlord under the circumstances here present has disallowed the petitioners’ standing to sue to protect or defend their interests as welfare recipients-tenants under section 143-b of the Social Services Law, under which, on the landlord’s proceedings to evict based on nonpayment of rent, the petitioners would be enabled under the Spiegel Act to raise the existing violations of the local building code as a defense in such proceeding; (2) that only the initial decision to invoke section 143-b is discretionary in respondent, and once he has invoked subdivision 2 of said section, the act makes it clear that respondent has no authority to pay back-rent withheld until violations are actually corrected (§ 143-b, subd. 6) or to pay other than cash grants ■where the recipients have not demonstrated mismanagement or abuse of funds; (3) that the administrative remedies provided within the fair hearing procedures established by the State statutes and regulations governing the administration of public assistance do not allow for stays or injunctions, which are necessary to protect the petitioners’ interest; that such administrative *957 remedies would not be adequate or equivalent to the remedies here sought, and would therefore be futile, and that accordingly exhaustion of such administrative remedies is not required.
It appears from the record herein that, prior to the respondent’s invocation of subdivision 2 of section 143-b of the Social Services Law, he had been paying to petitioners the rent money for their housing accommodations. He was clearly authorized, under subdivision 2 of section 143-b, to withhold payment of such rent from and after the date he was notified officially by the Building Inspector of Port Chester that there were outstanding violations of law against the petitioners’ housing accommodations, which were dangerous, hazardous or detrimental to their life or health.
But, in our opinion, by the clearly expressed provisions of subdivision 6 of section 143-b the respondent had no authority, discretionary or by statutory intendment, to pay to the landlord any rent withheld except ‘ ‘ upon proof satisfactory to it [the public welfare department commissioner] that the condition constituting a violation was actually corrected.” It is apparent from this record that there are still uncorrected violations of serious nature with respect to the rear porches and stairs of the premises, and indeed, possibly other uncorrected violations, and that respondent has not received proof of correction thereof. Absent such proof, respondent may not pay rent withheld to the landlord.
We are not unmindful of respondent’s pragmatic objective to promote the correction of all violations alleged against the subject premises by paying over to the landlord the withheld rents, in the face of the landlord’s plea that he needs the rent funds to meet the expense entailed in making the repairs and improvements required to correct the violations. Nevertheless, however, worthy the respondent’s motivation, he lacks the power to make such withheld rental payments until the violations are certified to him as cleared by the Village Building Inspector.
Petitioners clearly have standing to bring this proceeding for declaratory judgment and equitable relief. Their administrative remedies pursuant to the “ fair hearing ” procedures under the Social Services Law are patently not equivalent to the remedies here sought. They would be futile because what petitioners here seek — a declaration of their rights of status and injunctive relief — are beyond the intent and scope of such administrative procedures. Consequently they may not in reason and justice be required to exhaust such futile remedies. (Cf. Lesron Junior, Inc. v. Feinberg, 13 A D 2d 90.)
*958 Furthermore, it is quite clear from the explicit language of section 143-b (subd. 5, pars, [a], [b]) that petitioners are granted a valid defense in an action or summary proceeding against them for nonpayment of rent by showing existing violations in the premises constituting their residence which relate to conditions which are dangerous, hazardous or detrimental to life or health, as the basis for nonpayment. In our opinion the respondent may not by unilateral action, and without petitioners ’ consent, deprive them of their defense as in that statute granted them.
The “ Declaration of purpose and necessity ” set forth in the Spiegel Act (L. 1962, ch. 997, § 1) makes clear that it seeks to eliminate, for people who are recipients of public assistance, the evils and abuses of landlords which have caused welfare tenant-recipients ‘1 to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services ”.
There is nothing in title 1 of article 5 of the Social Services Law which would warrant a determination that the petitioners may be deprived of their statutory right to defend a proceeding against them for nonpayment of rent under section 143-b (subd. 5, pars, [a], [b]). In our opinion they must be accorded the same rights in this respect as nonrecipients of public assistance have been accorded under section 305-a of the Multiple Residence Law.
Indeed, the Spiegel Act recognizes most emphatically that sanctions are necessary against offending landlords, and that one of the most efficacious sanctions is the withholding of rent money until the violations, which concern conditions that are dangerous, hazardous or detrimental to life or health, are actually corrected.
Accordingly, we conclude that respondent should be enjoined from paying to the landlord any rent withheld since June, 1969, but that he must continue to hold such withheld rents until he has received a certificate of correction of violations from the Building Inspector of the Village of Port Chester.
Under the circumstances here presented we believe it would be inequitable to order respondent to recover from the landlord the rent moneys heretofore turned over to him. It appears from the record herein that, as a result of such direct payments of rent withheld by the respondent, many of the violations complained of have been corrected. It further appears that petitioners ‘ ‘ are willing to have money released to the landlord *959 but only after depositing the money in escrow with the court so that there would be court supervision over how the money would be spent.”
It is unnecessary to involve this court in the requested supervision. Petitioners’ objective may best be achieved if respondent continues to withhold rents from the landlord until he corrects fully the violations still remaining uncorrected. Petitioners are not precluded from agreeing to direct payments of rent withheld by respondent to the landlord, if they are persuaded that such payment will ensure correction of the violations.
We have considered the other defenses in point of law presented by respondent and those presented in reply by petitioners, but do not and need not reach them, in view of the foregoing determinations.